## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION

        Plaintiffs,

    v.                                 Civil Action No. ___5:18-cv-01478

DAVID G. ZATEZALO, Assistant Secretary
for Labor for Mine Safety and Health and
THE MINE SAFETY AND
HEALTH ADMINISTRATION,

        Defendants.

## COMPLAINT FOR WRIT OF MANDAMUS, PETITION FOR REVIEW, AND PETITION FOR DECLARATORY JUDGMENT

    **COMES NOW** Plaintiff, United Mine Workers of America, International Union ("UMWA") and herein complains of the Defendants, DAVID G. ZATEZALO, Assistant Secretary for Mine Safety and Health, U.S. Department of Labor; and the MINE SAFETY AND HEATLH ADMINISTRATION, U.S. Department of Labor, as follows:

## I.    PRELIMINARY STATEMENT

    1.    Notwithstanding mandatory statutory and regulatory provisions, the Defendants have acted so as to undermine the health and safety of the nation's miners by allowing a recidivist coal operator to circumvent the safety requirements of the Mine Act. By taking the specific actions in establishing a precedent that enables future diminutions of the statutory provisions and purpose, Defendants have harmed the UMWA, its members and coal miners across the country. As explained below, on October 24, 2013, the Mine Safety and Health Administration ("MSHA") issued a Notice of a Pattern of Violations ("POV Notice") to Pocahontas Coal Company, LLC's ("Pocahontas") Affinity Mine because of a record of significant safety violations. A POV Notice is an enforcement tool that enables MSHA to increase regulatory scrutiny at a noticed mine. POV Notices are issued pursuant to Section 104(e) of the Federal Mine

Safety and Health Review Act of 1977 ("Mine Act"), 30 U.S.C. § 814(e).  The Mine Act provides that such a POV Notice may only be terminated if an inspection of the entire mine discloses "no violations of mandatory health and safety standards that could significantly and substantially contribute to the cause and effect of a coal or other mine health and safety hazard . . . ." 30 U.S.C. § 814(e)(3).  Those types of violations are commonly referred to as "S&S violations."  MSHA has not, at any time relevant to this action, conducted an inspection of the entire Affinity Mine without finding any S&S violations.  Nonetheless, on August 28, 2018, without taking any steps to assure mine safety, Defendants terminated the POV Notice at Affinity Mine. The UMWA and its members are aggrieved by Defendant's unlawful action.

2.      The UMWA brings this action pursuant to the Administrative Procedure Act ("APA") 5 U.S.C. § 701 et seq. (the "APA).  Plaintiff asks this Court to declare that Defendants are in violation of the APA for unlawfully ignoring the statutory and regulatory requirements for terminating a POV Notice and replacing it with another process that was not created by Congress or otherwise properly promulgated.  Plaintiff also asks this Court to compel the Defendants and those acting under them to take all necessary and appropriate action to immediately enforce the POV Notice at Affinity Mine as required by Section 104(e) of the Mine Act.  Further, the Plaintiffs ask the Court to set aside as unlawful Defendants' actions in terminating the POV Notice at Affinity Mine.

3.      This is also a mandamus action seeking a writ to compel the Defendants and those acting under them to take all necessary and appropriate action to immediately enforce the POV Notice at Affinity Mine as required by Section 104(e) of the Mine Act.

4.      This is also an action under the Declaratory Judgment Act, 28 U.SC. § 2201. Plaintiff seeks a declaration of legal rights recognizing the invalidity of Defendant's actions as alleged in this complaint and Plaintiff's right to the protections afforded by the Mine Act.

## II.    JURISDICTION

5.      This action is brought pursuant to 5 U.S.C. §§ 702-706. The APA entitles a person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, to judicial review thereof. 5 U.S.C § 702. Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in court are subject to judicial review under the APA. 5 U.S.C. § 704.

6.      Jurisdiction is also conferred pursuant to 28 U.S.C. § 1361, which provides: "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Jurisdiction is further conferred by 28 U.S.C. § 1331 (federal subject matter jurisdiction).

7.      This action is also brought pursuant to 28 U.S.C. §§ 2201-02. That provision grants this Court the authority, in a case of actual controversy, to make a declaration of legal rights. Such a declaration has the force and effect of a final judgement or decree.

8.      As set forth below, Defendants' actions in ignoring the statutory and regulatory requirements for terminating a POV Notice and replacing it at Affinity Mine with another process that was not created by Congress or properly promulgated was a final agency action. By terminating the POV at Affinity Mine, Defendants have failed to fulfill the duties they owe to the nation's coal miners, including UMWA members, many of whom live and work in this judicial district. Plaintiff is aggrieved by Defendants' failure and has no adequate remedy at law but the relief sought. This is a case of actual controversy and requires an order setting aside the agency action and/or a declaration regarding the invalidity of the Defendant's actions as alleged in this complaint.

9.      Section 106(a)(1) of the Mine Act, 30 U.S.C. § 816(a)(1), does not deprive this Court of jurisdiction. Section 106(a)(1) of the Mine Act provides that, "[a]ny person adversely

affected or aggrieved by an order of the Commission under this Act may obtain review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or in the United States Court of Appeals for the District of Columbia Circuit . . . ." As the present action does not seek review of an order of the Commission, this Court retains original mandamus jurisdiction under 28 U.S.C. § 1361 and jurisdiction over the APA claims under 5 U.S.C. §§ 702-706.

### III.   VENUE

10.     Venue is proper under 28 U.S.C. § 1391(e), because this is an action against an officer and agency of the United States in their official capacities, brought in the district where a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred. The Affinity Mine is located in Raleigh County, West Virginia, which is located within the jurisdiction of this Court. Defendant MSHA maintains a district office located at Mount Hope, West Virginia, which is also located within the jurisdiction of this Court. MSHA District 4 is responsible for monitoring compliance with the Mine Act and MSHA regulations at Affinity Mine. MSHA, including District 4, operates under the authority of Defendant David G. Zatezalo, the Assistant Secretary of Labor for Mine Safety and Health.

11.     Venue is also appropriate in this district because many coal miners, who are adversely affected and harmed by Defendants' actions, live and work within the jurisdiction of this Court.

12.     Venue is also proper under the APA, 5 U.S.C. § 703, because this is a Court of competent jurisdiction and the Mine Act does not contain a special statutory review proceeding relevant to the instant subject matter.

### IV.   PARTIES

13.     Plaintiff UMWA is a labor organization that maintains its principal office in Triangle, Virginia.   The UMWA represents working men and women in a wide range of

industries, including the mining industry. It represents thousands of miners working in facilities which fall within the jurisdiction of the Mine Act and are the intended beneficiaries of its health and safety provisions. The UMWA maintains offices in Beckley and Charleston, West Virginia.

14.     Defendant DAVID G. ZATEZALO is the Assistant Secretary for Mine Safety and Health of the United States Department of Labor ("Labor") and is being sued in his official capacity. The Assistant Secretary is responsible for the execution and enforcement of the Mine Act and the establishment and enforcement of MSHA's regulations. Further, the Assistant Secretary manages, directs, and oversees MSHA District 4, where Affinity Mine is located.

15.     Defendant MINE SAFETY AND HEALTH ADMINISTRATION is an agency of the Department of Labor, administers and enforces the Mine Act, and promulgates regulations thereunder. MSHA District 4 is an administrative subdivision of MSHA and is responsible for monitoring compliance with the Mine Act and MSHA regulations at Affinity Mine. MSHA District 4 maintains an office in Mount Hope, West Virginia.

## V.      LEGAL BACKGROUND

16.     Section 104(e)(1) of the Mine Act requires MSHA to provide notice to any mine operator that has a "pattern of violations of mandatory health and safety standards . . . which are of such a nature as could significantly and substantially contribute to the cause and effect of . . . health or safety hazards." 30 U.S.C. § 814(e)(1). If an operator receives a POV Notice, the statute compels MSHA to provide enhanced scrutiny and enforcement at that mine to protect the health and safety of miners. Specifically, if an inspection within 90 days after the issuance of the Notice finds another "significant and substantial" ("S&S") violation of health or safety standards, MSHA has a duty to issue "withdrawal orders" pulling miners from the affected area until MSHA determines that the violation has been abated. *Id.*

17.     If a mine receives a withdrawal order within 90 days of the issuance of the POV Notice pursuant to Section 104(e)(1), then MSHA has an affirmative duty to issue additional

withdrawal orders for any "S&S" violations it finds during subsequent inspections of the mine.  30 U.S.C § 814(e)(2).

18.     If MSHA issues a POV Notice and a withdrawal order within 90 days of that issuance, MSHA has a duty to issue withdrawal orders for all S&S violations found at the mine until such time as the POV Notice is "terminated."  In section 104(e)(3) of the Mine Act, Congress set the requirements for the termination of a POV Notice.  30 U.S.C. § 814(e)(3).  Congress provides:

> If, upon an inspection of the entire coal or other mine, an authorized representative of the Secretary finds no violations of mandatory health or safety standards that could significantly and substantially contribute to the cause and effect of a coal or other mine health and safety hazard, the pattern of violations that resulted in the issuance of a notice under paragraph (1) shall be deemed to be terminated. . . ."

*Id*.  In short, MSHA must conduct a "clean inspection" at the subject mine, free from any S&S violations, in order to terminate a POV Notice.

19.     The current regulations implementing Section 104(e) of the Mine Act, and the regulations at issue here, were promulgated by MSHA in 2013 and codified as 30 C.F.R. §§ 104.1-104.4. The 2013 POV rule requires MSHA to screen every mine in the country for the existence of a "Pattern of Violations" yearly.  The regulation provides general criteria for determining which mines have a POV, and provides for the specific criteria that MSHA uses to screen mines POV status to be posted on MSHA's web site.  *Id*.  Posting the criteria on the website allows operators to monitor their compliance to determine whether they are close to a pattern of violations.  With respect to terminating a POV Notice, the current regulation "mirrors the provision in the Mine Act."  *See* 2013 POV Final Rule, 78 FR 5056-01.  In short, the regulations, like the Mine Act itself, require a "clean" inspection free from S&S violations in order to terminate a POV Notice.

## VI.    FACTS

20.    On October 24, 2013, MSHA issued Written Notice No. 7219153 to Pocahontas for a pattern of violations at the Affinity Mine. (A copy of that written notice is included as Attachment 1). Within 90 days of that Written Notice, MSHA conducted another inspection of the Mine and found an S&S violation, prompting a withdrawal order. Pursuant to the POV Notice and Sections 104(e)(1) and (2) of the Mine Act, MSHA began issuing withdrawal orders for "S&S" violations that it found at Affinity Mine during subsequent inspections. Pocahontas contested these orders and those contests were brought before the Federal Mine Safety and Health Review Commission ("Commission") and assigned to an administrative law judge ("ALJ"). In the case before the ALJ, Pocahontas challenged the underlying POV Notice as invalid.

21.    No hearing was held before the ALJ. Instead, Pocahontas filed a motion for summary decision and the Defendants filed a motion for partial summary decision. On November 3, 2015, the ALJ issued an "Order Denying Pocahontas' Motion for Summary Decision and Granting Secretary's Motion for Partial Summary Decision." 37 FMSHRC 2654 (Nov. 2015) (ALJ Miller). Based on the record, the ALJ determined that the Defendants had proven the existence of a pattern of violations at the Affinity Mine and upheld the POV Notice. *Id.* at 2673.

22.    On December 31, 2015, Pocahontas filed a petition for discretionary review ("PDR") related to the POV Notice with the Commission, which was granted. On July 10, 2018, Pocahontas filed a motion to dismiss its PDR review under seal. (A copy of the Motion is included as attachment 2). On July 17, 2018, Defendants filed a Response in Support of Pocahontas' Motion, also under seal. (A copy of the Response is included as attachment 3). On July 19, 2018, the Commission issued an order observing that neither Defendants nor Pocahontas had filed a motion to make submissions under seal. (A copy of that order is included as attachment 4). Further, the Commission noted that neither party provided a justification for filing the motion to withdraw the PDR and the related response under seal. The Commission ordered the parties to

explain why the documents were filed under seal. On July 26, 2018, Defendants issued a response to the Commission order, stating that it was unaware that Pocahontas intended to file under seal. (A copy of that response is included as attachment 5). The Defendants did not explain why they filed the response under seal, but agreed to publicly file its response to the motion to dismiss the PDR.

23. On August 28, 2018, the Commission granted the motion, noting that as a result, "[t]he Administrative Law Judge's summary decision is final and unappealable." (A copy of the Commission's Order is included as Attachment 6). Therefore, the ALJ's decision that a pattern of violations existed at the Affinity Mine and that the POV Notice was valid was determined to be a final Order of the Commission.

24. One of the four Commissioners, Commissioner Robert F. Cohen Jr., dissented to the Order. Commissioner Cohen explained that Pocahontas had only agreed to withdraw its PDR because Defendants had agreed to settle the matter by terminating the POV Notice. (A copy of the settlement agreement is included as Attachment 7). Specifically, the settlement provides:

> In exchange for Pocahontas filing a Motion to Withdraw Appeal in the Proceeding, and the Commission's issuance of a full, clear, and unambiguous dismissal of the Proceeding, MSHA agrees to immediately terminate Notice of Pattern of Violations Number 7219153 issued at the Affinity Mine on October 24, 2013, and provide prompt written acknowledgement of the same to Pocahontas. (Attachment 7 at 1).

25. The dissent noted that the motion "makes no mention of the statutory provision for obtaining relief from the POV notice." Attachment 6 at 4. The Commission's Order does not reach this issue either. The dissent also noted that under the plain meaning of Section 104(e)(3), a POV Notice can only be terminated when the mine covered by the Notice has an entire inspection without being cited for an S&S violation. According to the dissent, the record lacked "any evidence that Pocahontas' Affinity Mine" met the requirements to be removed from POV status and, as a result "the parties' settlement agreement is legally unsupportable." *Id*.

26.    The Defendant's July 17, 2018 Response, which was refiled publicly with the Commission on July 26, 2018, provided the Defendant's legal justification for removing Affinity Mine from POV status. Specifically, that response states:

> For the same reasons the Commission lacks jurisdiction to review the issuance of a notice of pattern-of-violations, as discussed in *Pocahontas Coal Company*, 38 FMSHRC 176 (2016), the Commission lacks jurisdiction to review the termination of a notice of pattern-of-violations such as that contemplated by the above-referenced agreement between the parties. (Attachment 3 at 1-2).

27.    On or about September 5, 2018, eight days after the POV Notice was terminated, MSHA issued an S&S violation at Affinity Mine for failure to provide protection from falls of roof, face, and ribs. This was the same hazard that was cited in the 2013 POV Notice. MSHA did not issue a withdrawal order.

28.    On September 14, 2018, the UMWA's Administrator of Occupational Health and Safety, Josh Roberts, sent a letter to MSHA District 4 District Manager David Mandeville about the settlement. (A copy of the letter is included as Attachment 8). In that letter, Administrator Roberts noted:

> Once a mine has received a POV Notice, MSHA's authority to withdraw the notice is clearly spelled out in the Mine Act: Section 104(e)(3) states that before a POV Notice can be terminated, there must be an inspection of the entire coal mine where MSHA finds no S&S violations. I have reviewed the data on MSHA's online Mine Data Retrieval System and there is no evidence that the mine has received such a clean inspection. Despite a history of repeated S&S violations (which has persisted in each and every year since 2013), MSHA has nevertheless removed the mine from the POV. Therefore, I am requesting your assistance in better understanding the reasoning for this decision. (Attachment 8 at 1).

29.    In the letter, the UMWA noted that, pursuant to the relevant provisions of the statute and regulations, a POV Notice can only be terminated after an inspection of the entire mine finds no S&S violations. Because there was no publicly available record indicating that such an inspection ever occurred, Plaintiff asked if there were any such inspections at the Affinity Mine that were not reflected in MSHA's records. If not, the UMWA asked for clarification of the Defendant's legal basis for the decision to remove the mine from POV status.

30.      On October 3, 2018, District  Manager  Mandeville  sent a response to the UMWA's September 14 letter.  (A copy of the letter is included  as Attachment 9).  In that letter, District  Manager  Mandeville  admitted that Defendants  terminated  the POV Notice, "even though [Affinity  Mine] did not receive an inspection  completely  free of S&S violations  . . . ." (Attachment 9 at 2).  Nonetheless, Mr. Mandeville  suggested  that Affinity  had made "remarkable  progress" with  respect to compliance  and accident  prevention  and provided statistics  purporting  to show that progress.  *Id*. at 1-2. District  Manager  Mandeville  further  opined that, following  the Commission's open meeting  to discuss  the POV Notice at Affinity  Mine on July 13, 2017, Defendants  believed a "majority  of the Commissioners  indicated  that they would  vacate the ALJ's decision and remand the case for further  proceedings."   *Id*. at 2.  Defendants  were purportedly  concerned  that an adverse Commission  decision  would  undermine  agency  discretion  related  to POV Notices, make enforcement  more difficult,  and negatively  impact  other federal litigation  related  to the POV final rule.  *Id*. at 2-3. District  Manager  Mandeville  expressed  his belief  that the settlement  "preserved the POV finding  in this case and preserved MSHA's ability  to enforce  the rule in the same manner it has done historically."   *Id*. at 2.  In the letter,

31.      Notably  absent  from  the correspondence  of October 3, 2018 was any recitation  or citation  of any legal basis for removing  Affinity  Mine from POV status given the fact that no "clean"  inspection  had occurred.

32.      Defendants  have discarded  the process  for terminating  a POV Notice contained  in Section  104(e)(3) of the Mine Act and 30 C.F.R. § 104.4 of the regulations  and replaced it with another  process that was not created by Congress or promulgated  under the APA. As a result, Defednants  are no longer  enforcing  a valid  POV Notice at Affinity  Mine.

### VII.   FIRST CLAIM FOR RELIEF:  Violation of the Mine Act and the APA

#### a.  Standing

33.     To establish prudential standing under the APA, a plaintiff must demonstrate that it suffered a legal wrong or was adversely affected or aggrieved by a final agency action.  5 U.S.C. § 702; *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 US 479, 488 (1998).  A party establishes that it was adversely affected or aggrieved by showing that it suffered an "injury in fact" and that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Ass'n of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152 (1970).  For a plaintiff's interests to be arguably within the "zone of interests" to be protected by a statute, there does not have to be an "indication of congressional purpose to benefit the would-be plaintiff." *See Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399-400 (1987).  The question with respect to prudential standing is not whether Congress specifically intended to benefit the plaintiff, but instead what interests are arguably to be protected by the statutory provision at issue and whether plaintiff's interests affected by the agency action in question are among them.  *Nat'l Credit Union Admin v. First Nat'l Bank & Trust Co.*, 522 U.S. at 492.  Review under the APA is only available where there is "final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704.

34.     The UMWA and its members are adversely affected and aggrieved by Defendants' decision to ignore the requirements for terminating a POV Notice under Section 104(e)(3) and 30 C.F.R. § 104.4 and replace it with another process that was not created by Congress or promulgated under the APA.  A POV Notice is a serious sanction and the threat of POV status forces operators to comply with health and safety regulations they might otherwise ignore.  In short, the threat of POV status deters violations of health and safety standards in the nation's mines.  Defendants' August 28, 2018, unlawful termination of the POV Notice at Affinity

Mine has undermined the POV standard and its deterrent effect. When operators are no longer deterred from unlawful action the lives, limbs, and health of UMWA members, and other miners, are at stake. Plaintiff, its members, and other miners across the country, will bear the burden of the Defendants' failure to enforce the valid POV Notice at Affinity Mine. By decreasing safety in the nation's mines, Plaintiff and miners all over the country have been injured in fact by Defendants' actions. That injury falls within the zone of interests covered by Section 104(e)(3). Plaintiff's claims pertain to its organizational purpose and do not require the participation of individual members.

35.     Defendant's decision to ignore the requirements for terminating a POV under Section 104(e)(3) and 30 C.F.R. § 104.4 and replace it with another process that was not created by Congress or promulgated under the APA is a final agency action justifying judicial review. The POV Notice was illegally terminated and will no longer be enforced. The Defendants have improperly established a precedent for terminating POV Notices that is in contravention of the plain language of the statute and regulations. No administrative framework exists within the Mine Act to compel the Defendants to comply with Section 104(e). The Mine Act's special judicial review provision, Section 106(a)(1), only applies to those aggrieved by "an order of the Commission," not a party aggrieved by the Defendants' failure to enforce the Act. Therefore, Plaintiff has no other adequate means of relief beyond an Order compelling the Defendants to enforce the POV Notice, as required by the Mine Act.

**b. Claim under 5 U.S.C. § 706(1)**

36.     To remedy a legal wrong or the adverse effect of an administrative agency's actions, the APA allows a reviewing court to, "compel agency action unlawfully withheld . . . ." 5 U.S.C. § 706(1). A claim under § 706(1) can only proceed where a party asserts than an agency failed to take a discrete agency action that it was required to take. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004); *see also Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs,*

714 F.3d 186, 195 (4th Cir. 2013) (Section 706(1) is "like the mandamus remedy" in that it can compel an agency to perform a non-discretionary act).

37.     Defendants owe a legal duty to UMWA members, and other miners, to enforce a valid POV Notice. Section 105(e)(1) of Mine Act provides that if upon an inspection within 90 days following the issuance of a POV Notice, an authorized representative of the Secretary finds any S&S violations, "the authorized representative *shall* issue" a withdrawal order. (Emphasis added). The related regulation, 30 C.F.R. § 104.3(c) contains a similar duty stating, "[i]f MSHA finds any S&S violation within 90 days after the issuance of the pattern notice MSHA *will* issue an order for withdrawal . . . ." Further, if such a withdrawal order is issued, a "withdrawal order *shall* be issued" on any subsequent inspection that discloses an S&S violation. 30 U.S.C. § 814(e)(2) (emphasis added); *see also* 30 C.F.R § 104.3(d) ("[I]f a withdrawal order is issued under paragraph (c) of this section, any subsequent S&S violation *will* result in a withdrawal order . . . ." (Emphasis added)). The Mine Act provides for only one method for terminating a Notice of POV, stating only that if an inspection of the entire mine discloses no S&S violation, the issuance of the notice "shall be deemed to be terminated." 30 U.S.C. § 814(e)(3). The implementing regulations "mirror" these statutory requirements. 30 C.F.R. § 104.4; *2013 POV Final Rule*, 78 FR 5056-01.

38.     At Affinity Mine, Defendants issued a POV Notice and began issuing withdrawal orders. Affinity Mine never had a "clean" inspection free from S&S violations. Nonetheless, Defendants have stopped enforcing the POV Notice and have stopped issuing withdrawal orders at Affinity Mine. Defendants had no legal authority to terminate the POV Notice or cease issuing withdrawal orders. Enforcement of the POV Notice is an official act or duty. Congress has charged Defendants with the public duty to enforce Section 104(e) of the Mine Act. As a result, Defendants have unlawfully withheld a required agency action and are derelict in their duties. This Court should compel the agency to comply with the requirements of 30 U.S.C. § 814(e) and 30 C.F.R. § 104.

### c.   Claim under 5 U.S.C. § 706(2): Arbitrary and Capricious

39.     The APA allows a reviewing court to hold unlawful and set aside agency action that is arbitrary and capricious.   5 U.S.C. § 706(2).   An agency action is arbitrary and capricious if the agency fails to examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, (1962).   In reviewing that explanation, a court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys.,* 419 U.S. 281, 285, (1974); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).   An agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).

40.     The Defendants ignored the process for terminating a POV Notice and replaced it with another process that was not created by Congress or promulgated under the APA. This action was arbitrary and capricious because it relied on factors that Congress did not intend for it to consider.   The only factors to be considered when determining to terminate a POV Notice is whether MSHA conducted a "clean" inspection of the entire mine without finding an S&S violation.   30 U.S.C. § 814(e)(3).   No such examination occurred at the Affinity Mine.   Defendants therefore considered other factors not intended by Congress in terminating the POV Notice.

### d.   Claim Under 5 U.S.C. § 706(2): In Excess of Statutory Authority

41.     The APA allows a reviewing court to hold unlawful and set aside agency action that exceeds the agency's statutory authority.   5 U.S.C. § 760(2).   A court will declare

agency actions in excess of statutory authority if they bear no relationship to the particular statutory terms at issue. *See Batterton v. Francis*, 432 U.S. 416, 428 (1977).

42.     Congress' clear, unambiguous intent was for mines placed on a POV to remain on that POV status until MSHA conducted an inspection of the entire mine without finding an S&S violation. The Defendant's stated reasons for terminating the POV Notice at Affinity mine bears no relationship to this statutory language and is inconsistent with Congressional intent. As a result, this Court should hold unlawful and set aside the Defendants' action in ignoring the statutory and regulatory requirements for terminating the POV Notice at Affinity Mine.

### VIII.    SECOND CLAIM FOR RELIEF:  Petition for Writ of Mandamus

43.     District courts have original jurisdiction over any action in the nature of a mandamus to compel an officer or employees of the United States or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. To establish the conditions necessary for issuance of a writ of mandamus, the party seeking the writ must demonstrate that: (1) it has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances. *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999) (*citing Kerr v. U.S. Dist. Court for the N. Dist. of Cal.,* 426 U.S. 394, 403 (1976); *Estate of Michael ex rel. Michael v. Lullo,* 173 F.3d 503, 512–13 (4th Cir.1999); *In re First Fed. Sav. & Loan Ass'n of Durham,* 860 F.2d 135, 138 (4th Cir. 1988); and 3 William Blackstone, *Commentaries*,*110–111).

44.     The UMWA has a clear and undisputable right to the writ. To establish a clear and undisputed right to the writ, Plaintiff must demonstrate the Defendants have a legal obligation to provide it with the action withheld by the agency. *See e.g. Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997); *see also Oncology Associates,*

*P.C.*, 198 F.3d at 513-15 (Court considered whether social security regulations created a right to withheld agency action.).   Other circuits have used the "zone of interests" analysis used for determining standing under the APA to determine whether a party has a right to a writ of mandamus.   *See Hernandez-Avalos v. INS*, 50 F.3d 842, 846-47 (10th Cir. 1995); *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992).   For the reasons discussed in Paragraph 33-34, *infra*, Defendants have a legal obligation to enforce the POV at Affinity Mine and that action has been withheld.

45.     Defendants have a clear duty to enforce the POV Notice at Affinity Mine. A clear duty exists when a non-discretionary act is required by law.   *Cent. S.C. Chapter, Soc. of Prof'l Journalists, Sigma Delta Chi v. U.S. Dist. Court for the Dist. of S.C.,* 551 F.2d 559, 562 (4th Cir. 1977).   For the reasons discussed in Paragraphs 37-38, *infra*, Defendants have a non-discretionary legal duty to enforce the POV at Affinity Mine.

46.     Enforcement of the POV Notice is an official act or duty.   Congress has charged the Defendants with the public duty to enforce Section 104(e) of the Mine Act.

47.     Plaintiff has no other adequate means to attain the relief desired.   A party seeking a writ of mandamus must exhaust all administrative remedies before seeking the writ, unless resort to administrative procedures would be futile.   *Oncology Associates, P.C.*, 198 F.3d at 515 (*citing Hopewell Nursing Home, Inc. v. Schweiker*, 666 F.2d 34, 42 (4th Cir. 1981)*; McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991); and *Starnes v. Schweiker*, 715 F.2d 134, 142 n.6 (4th Cir. 1983) *vacated*, 467 U.S. 1223 (1984)).   For the reasons discussed in Paragraph 35, *supra*, Plaintiff has no other adequate means to attain the relief desired.

48.     The issuances of the writ will effect right and justice in this circumstance. The UMWA and its members will suffer irreparable harm as a result of Defendant's unlawful failure to enforce Section 104(e) of the Mine Act. If the writ is granted, the Defendants will suffer no harm, but merely be required to comply with the duties imposed by Congress.

## IX.      THIRD CLAIM FOR RELIEF:  Declaratory Judgment

49.      The Declaratory Judgment Act, 28 U.S.C. § 2201, grants this Court authority to declare Plaintiffs' legal rights when an actual controversy exists.

50.      As stated above, Plaintiffs and Defendants have adverse legal interests that are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in accordance with 29 U.S.C. § 2201.

51.      Defendants' actions in ignoring the statutory and regulatory requirements for terminating a POV Notice and replacing it at Affinity Mine with another process that was not created by Congress or properly promulgated was arbitrary and capricious, in excess of statutory authority, and failed to take action as required by law.

52.      Plaintiffs respectfully ask this Court to declare that the Defendants' actions in ignoring the statutory and regulatory requirements for terminating a POV Notice and replacing it at Affinity Mine with another process that was not created by Congress or properly promulgated violated the APA and the Mine Act, and, therefore, respectfully request that this Court set aside Defendant's actions.

## X.      PRAYER

WHEREFORE, the Plaintiff prays that this Court:

1.      Declare that Defendants' actions in ignoring the statutory and regulatory requirements for terminating a POV Notice and replacing it at Affinity Mine with another process that was not created by Congress or properly promulgated violates the Plaintiff's rights under the APA and the Mine Act;

2.      Issue a writ to compel the Defendants and those acting under them to take all appropriate action to enforce Section 104(e) of the Mine Act by enforcing the POV Notice at Affinity Mine;

3.      Set aside unlawful Defendant's action in terminating the POV Notice at Affinity Mine;

4.      Grant such other and further relief as this Court deems proper.

Respectfully Submitted,

/s/ Charles F. Donnelly

Charles F. Donnelly – WVSB No. 1039
General Counsel
United Mine Workers of America
1300 Kanawha Boulevard East
Charleston, West Virginia 25301
(304) 346-0341
(304) 346-1186 (fax)
cdonnelly@umwa.org


/s/ Kevin F. Fagan

Kevin F. Fagan, Esquire - WVSB No. 5216
United Mine Workers of America
18354 Quantico Gateway Drive, Suite 200
Triangle, Virginia 22172
(703) 291-2418
(703) 291-2448 (fax)
Email: kfagan@umwa.org


Timothy J. Baker – *Pro Hac Vice Forthcoming*
United Mine Workers of America
18354 Quantico Gateway Drive
Triangle, VA 22172
(703) 291-2418
(703) 291-2448 (fax)
tjbaker@umwa.org

## CERTIFICATE OF SERVICE

I do hereby certify that, upon receipt of the signed Summons, true and accurate copies of this COMPLAINT shall be served upon the Defendants and other officers of the United States listed below by placing same in the U.S. Mail, certified, this 29th day of November, 2018:

Acting Attorney General Matthew G. Whitaker
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Civil Process Clerk Southern District of West Virginia
300 Virginia Street East
Room 4000
Charleston, WV 25301

R. Alexander Acosta
Secretary, U.S. Department of Labor
200 Constitution Ave NW
Washington, DC 20210

David G. Zatezalo
Assistant Secretary for Mine Safety and Health
201 12th St S
Suite 401
Arlington, VA 22202-5450

Mine Safety and Health Administration
201 12th St S
Suite 401
Arlington, VA 22202-5450

David Mandeville
District Manager
Mine Safety and Health Administration
District 4
100 Bluestone Road
Mt. Hope, WV 25880

*Counsel for Plaintiff*
_____/s/ Kevin F. Fagan_____
Kevin F. Fagan, WVSB No. 5216